**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT D. GAINES,

Plaintiff,

Case No.
Hon.

v.

DETROIT ENTERTAINMENT, L.L.C.,
a Michigan a limited liability company,
d/b/a MOTORCITY CASINO HOTEL,

Defendant.

**DEMAND FOR JURY TRIAL**

_______________________________________________/

THOMAS R. WARNICKE (P47148)
LAW OFFICE OF THOMAS R. WARNICKE, PLLC
Attorney for Plaintiff
30200 Telegraph Road, Suite 102
Bingham Farms, MI 48025
(248) 410-3031
tom@warnickelaw.com

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Robert D. Gaines, by and through his attorney, the Law Office of Thomas R. Warnicke, PLLC, for his cause of action against Defendant herein, states as follows:

## JURISDICTION AND VENUE

1.     Plaintiff, Robert D. Gaines, is and has been at all relevant times hereto, a citizen and resident of the city of Wayne, county of Wayne, state of Michigan, and within the Eastern District of Michigan and the jurisdiction of this Court.

2.     Defendant, Detroit Entertainment, L.L.C., is a domestic limited liability company, organized under the laws of the state of Michigan, with its principal place of business at 2901 Grand River Avenue, Detroit, Michigan 48201.

3.     Defendant, Detroit Entertainment, L.L.C. does business under the assumed name of MotorCity Casino Hotel and operates a casino and hotel at 2901 Grand River Avenue, Detroit, Michigan 48201.

4.     The MotorCity Casino Hotel complex has an approximate value of $825 Million and contains a historic building that housed the Wagner Baking Company, makers of the brand Wonder Bread.

5.     The complex houses an approximately 100,000 square-foot casino with slot machines, table games, spa, meeting and convention space, Sound Board live music theater, and a luxury hotel.

6.     MotorCity Casino Hotel was originally opened by Mandalay Resort Group.

7.   The Mandalay Resort Group's 53.5% stake in MotorCity Casino Hotel was later purchased on approximately April 12, 2005, for $525 million by Marian Illitch, who already owned 25% of MotorCity Casino Hotel.

8.   This action arises out of the illegal and wrongful discrimination, retaliation and discharge of Plaintiff from his employment with Defendant, wherein Plaintiff was terminated, in whole or in part, in violation of the Family Medical Leave Act - 29 USC 2016 et seq. ("FMLA"); in violation of Title VII of the United States Civil Rights Act of 1964, Civil Rights Act of 1991, as amended, in violation of the Michigan Elliott-Larsen Civil Rights Act - MCL 37.2101 et seq., including for age and race discrimination, as well as for various violations of the common laws of the state of Michigan, wherein Plaintiff is seeking damages and injunctive relief against Defendant.

9.   With respect to the federal claims asserted herein, the Court's jurisdiction is invoked pursuant to 28 USC §§ 1331 and 1343 for the violation of Plaintiff's federal statutory rights. With respect to the state law claims asserted herein, the Court's supplemental jurisdiction is invoked pursuant to 28 USC § 1367(a).

10. Venue is proper in this district pursuant to 28 USC § 1391(b), since the Plaintiff was employed by and worked for Defendant within this district, and the events giving rise to Plaintiff's claims occurred in this district.

**GENERAL ALLEGATIONS AND STATEMENT OF CLAIM**

11. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

12. Plaintiff is 47 years old.

13. Plaintiff is an African America male.

14. Plaintiff began his career with Defendant on or about November 15, 1999.

15. Plaintiff began his employment with Defendant before Defendant opened its doors for business in 1999.

16. Defendant opened its doors for business on or about December 15, 1999.

17. Plaintiff worked for Defendant for over 24 years.

18. Plaintiff worked in various positions during his career with Defendant.

19. On January 18, 2024, Plaintiff was working on-site for Defendant.

20. On January 18, 2024, Plaintiff was pulled off the casino floor and was escorted by his Manager (Mark) to Defendant's on-site Human Resources' office.

21. When Plaintiff arrived at HR, Union Representative Antonio George was present and he informed Plaintiff that HR had questions about Plaintiff's taking FMLA days off.

22.    Defendant's Senior Vice President of Human Resources, David Turner, walked into the meeting room, along with another member of Defendant's HR, Wendy Richardson.

23.    Defendant's Director of Human Resources and Employee Relations, JoAnn Taylor, did not attend the meeting in-person, however, she did attend via telephone.

24.    Mr. Turner had papers in his hand when he walked into the meeting.

25.    Mr. Turner then stated that he believed Plaintiff went on a cruise from December 18 through December 30, 2023.

26.    Mr. Turner stated that he had various pictures evidencing that Plaintiff was on a cruise from December 18 through December 30, 2023.

27.    Plaintiff informed Mr. Turner that his allegations as to the duration of those dates were not accurate.

28.    Rather, Plaintiff stated he was on a cruise from December 21 through December 26, 2023.

29.    Mr. Turner then stated he wanted to talk about Plaintiff's FMLA.

30.    For a significant period of time before December of 2023, and continuing through his termination, Plaintiff had been on an intermittent FMLA that was approved by Defendant.

31.    Mr. Turner then read aloud Plaintiff's FMLA certification from Guardian about why Plaintiff had received intermittent FMLA approval.

32.    Plaintiff was on an approved intermittent FMLA due to a back injury.

33.    Mr. Turner then showed copies of pictures to Plaintiff.

34.    Mr. Turner indicated that the copies of pictures were obtained from Facebook.

35.    Mr. Turner told Plaintiff that his approved FMLA could be taken away based on the pictures.

36.    Mr. Turner then pulled out from the papers he brought into the meeting a document entitled "Disciplinary Notice."

37.    A genuine copy of the "Disciplinary Notice" is attached hereto as **Exhibit A**.

38.    The Disciplinary Notice had certain sections of the document that were filled out in type-written font.

39.    The type-written font had been inserted into the Disciplinary Notice before Mr. Turner entered the meeting.

40.    One of the items that had already been filled out on the Notice before the meeting was an "X" being placed in the box indicating "Suspension Pending Investigation."

41.   Typed into the box labeled: "Details of specific infraction/problem/corrective action to be taken:" were the words: "Robert utilized FMLA on 12/18/23, 12/25/23, and 12/30/23".

42.   Those words had been typed into the Disciplinary Notice before the meeting.

43.   Those words were accurate, namely that Plaintiff had utilized FMLA on 12/18/23, 12/25,23, and 12/30/23.

44.   Also typed into the box labeled: "Details of specific infraction/problem/corrective action to be taken:" were the words: "During those dates, you were on a cruise".

45.   Those words had been typed into the Disciplinary Notice before the meeting.

46.   However, the affirmative statement in the Disciplinary Notice that Plaintiff was on a cruise on 12/18/23 was a false statement.

47.   Plaintiff was not on a cruise on 12/18/23.

48.   Plaintiff was in Michigan on 12/18/23.

49.   The affirmative statement that Plaintiff was on a cruise on 12/25/23 was a true statement.

50.   However, the affirmative statement in the Disciplinary Notice that Plaintiff was on a cruise on 12/30/23 was also a false statement.

51.   Plaintiff was in Michigan on 12/30/23.

52. Plaintiff properly utilized intermittent FMLA on 12/18/23.

53. Plaintiff properly utilized intermittent FMLA on 12/25/23.

54. Plaintiff properly utilized intermittent FMLA on 12/30/23.

55. The Disciplinary Notice contained a section titled "Witnessed by: _______________."

56. Typed into the section titled "Witnessed by:" were the words: "Timecard/Pictures."

57. The words "Timecards/Pictures" had been typed into the Disciplinary Notice before the meeting.

58. There were no persons listed in the section entitled "Witnessed by:________."

59. There were no timecards or pictures that witnessed or evidenced the statement that Plaintiff was on a cruise on 12/18/23 or 12/30/23.

60. The statement that Plaintiff was on a cruise on 12/18/23 and 12/30/23 and that it was "Witnessed by: Timecards/Pictures" was a false statement.

61. The Disciplinary Notice contained a section reading "Has employee been disciplined before? ☐ Yes ☐ No ".

62. Defendant has a written policy that employee discipline will fall off the employee's record if the employee does not have any other discipline within the preceding year.

63. On January 18, 2024, Plaintiff had not been disciplined by Defendant during the preceding year.

64. Thus, under Defendant's own policy, Mr. Turner should have inserted into the Notice a "✓" mark into the "No" box.

65. Instead, Mr. Turner inserted into the Notice a "✓" mark into the "Yes" box.

66. The insertion into the Notice that Plaintiff had been disciplined before was false under Defendant's existing policy.

67. The Disciplinary Notice contained a section titled "Give brief description of prior discipline and dates issued."

68. This section of the Disciplinary Notice was left entirely blank.

69. Mr. Turner did not write anything into this section during the meeting.

70. The Disciplinary Notice contained a section titled "Employee's response."

71. This section of the Notice was left entirely blank.

72. Mr. Turner did not write anything into this section during the meeting.

73. During the meeting, Plaintiff did provide a response to Defendant's allegation that he made false statements or omissions of pertinent facts on personnel records or other MotorCity Casino Hotel records or documents.

74.    Specifically, Plaintiff directly responded to Defendant's allegations that he was on a cruise on 12/18/23 and 12/30/23 by stating that those allegations were false.

75.    At the end of the meeting, Mr. Turner requested that Plaintiff sign the Disciplinary Notice.

76.    Plaintiff signed the Disciplinary Notice, which was not an admission of guilt, but only an acknowledgment of receipt/issuance of the Notice.

77.    Mr. Turner also signed the Disciplinary Notice.

78.    At the conclusion of the January 18, 2024 meeting, Plaintiff's employment status was then deemed to be suspended pending investigation as a result of Defendant's determination that Plaintiff violated of GROPC#5.

79.    Defendant's Disciplinary Notice, dated January 18, 2024, violated GROPC#5 because it made false statements or omissions of pertinent facts on Plaintiff's personnel record or other MotorCity Casino Hotel records or documents, as well as by giving false information in an investigation.

80.    From the end of the meeting on January 18, 2024 through January 23, 2024, Defendant did not conduct any further investigation into Defendant's determination that Plaintiff violated GROPC#5.

81.   Specifically, Defendant did not investigate whether its determinations were true as to whether or not Plaintiff was on a cruise on December 18 and 30, 2023.

82.   Defendant also failed to investigate whether or not Plaintiff properly utilized intermittent FMLA when calling off work on December 25, 2023.

83.   Plaintiff was terminated from his employment via a letter from Defendant dated January 23, 2024.

84.   A genuine copy of the January 23, 2024 "Termination Letter" is attached hereto as **Exhibit B**.

85.   The Termination Letter was sent to Plaintiff by Defendant via U.S. Mail.

86.   Plaintiff received the Termination Letter on or about January 26, 2024.

87.   The Termination Letter contained the statement: "Robert, you admitted that you were on a cruise and during your cruise to another country you called off on FMLA on December 18, 25, & 30, 2023."

88.   The above-quoted statement in the Termination Letter was a patently false statement.

89.   Rather, Plaintiff had only acknowledged that he was on a cruise on December 25, 2023.

90.   Additionally, Plaintiff further stated that he properly utilized his intermittent FMLA for December 18, 25 and 30, 2023.

91.   Specifically, Plaintiff never admitted or acknowledged in any way that he was on a cruise on December 18 or 30, 2023.

92.   In fact, Plaintiff expressly denied that he was on a cruise on December 18 or 30, 2023.

93.   Plaintiff was not on a cruise on December 18 or 30, 2023.

94.   The Termination Letter also contained the statement: "Additionally, you called off on Personal/Sick on December 19, 24, & 26, 2023."

95.   Plaintiff was eligible to take a Personal Day on December 19, 2023.

96.   Plaintiff properly called off work on December 19, 2023 by utilizing a Personal Day.

97.   Plaintiff was eligible to take a Personal Day on December 24, 2023.

98.   Plaintiff properly called off work on December 24, 2023 by utilizing a Personal Day.

99.   Plaintiff was eligible to take a Personal Day on December 26, 2023.

100.   Plaintiff properly called off work on December 26, 2023 by utilizing a Personal Day.

101. Plaintiff's act of calling off work on December 19, 2023 and utilizing a Personal Day was not a violation of Defendant's general rules.

102. Plaintiff's act of calling off work on December 24, 2023 and utilizing a Personal Day was not a violation of Defendant's general rules.

103. Plaintiff's act of calling off work on December 26, 2023 and utilizing a Personal Day was not a violation of Defendant's general rules.

104. Defendant's Termination Letter of Plaintiff's employment, dated January 23, 2024, contained numerous, willful, intentional, knowingly and patently false statements or omissions of pertinent facts.

105. Defendant's Termination Letter of Plaintiff's employment, dated January 23, 2024, violated GROPC#5 because it made false statements or omissions of pertinent facts on Plaintiff's personnel record or other MotorCity Casino Hotel records or documents, as well as by giving false information in an investigation.

106. Plaintiff filed a Charge of Discrimination with the Michigan Department of Civil Rights and the U.S. Equal Employment Opportunity Commission on July 15, 2024.

107. A genuine copy of Plaintiff's Charge of Discrimination is attached hereto as **Exhibit C**.

108.   Plaintiff's Charge of Discrimination was based on race and age.

109.   Plaintiff received a letter from the EEOC dated August 6, 2024, a genuine copy of which is attached hereto as **Exhibit D**.

110.   The EEOC issued a Determination and Notice of Rights to Plaintiff (i.e. Right-to-Sue letter) on September 30, 2025, a genuine copy of which is attached hereto as **Exhibit E**.

111.   Plaintiff filed this lawsuit within 90 days of his receipt of the Right to Sue letter.

112.   Defendant's purported reasons for terminating Plaintiff were unlawful, contrived, bogus, factually untrue, patently false and completely without merit.

113.   Additionally, Defendant's purported reasons for terminating Plaintiff were a pretext for Defendants' true and real reason(s) for terminating Plaintiff, which was in retaliation for Plaintiff's utilization of intermittent FMLA, for Plaintiff's age, and/or for Plaintiff's race.

114.   The above-listed factors were the actual and motivating factors in Defendant's decision to terminate Plaintiff, all of which were illegal.

115.   At all times during Plaintiff's employment with Defendant, Plaintiff was qualified for the position that he held with Defendant.

116. Defendant was predisposed to discriminate against Plaintiff because he was approved for intermittent FMLA, because he utilized his intermittent FMLA, because of his age, and because of his race, and that Defendant acted on that predisposition by intentionally, wrongfully and unlawfully terminating Plaintiff.

117. As a result of Plaintiff being terminated unlawfully, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight change, loss of the ordinary pleasures of everyday life, inability to socialize and enjoy his community, including the right to a gainful occupation of choice. Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

## COUNT 1

## VIOLATION OF THE FMLA - 29 U.S.C. 2601 et seq.
**(Discrimination, Harassment and Retaliation)**

118. Plaintiff repeats and re-alleges the allegations set forth above.

119.    Plaintiff was an eligible employee within the meaning of the Family and Medical Leave Act (hereinafter "FMLA") on the date(s) he utilized intermittent FMLA in December of 2023.

120.    Plaintiff was employed by Defendant for a time period greater than 12 months as of the date(s) he requested FMLA time as stated above.

121.    During the aforementioned 12 months, Plaintiff worked greater than 1250 hours.

122.    Defendant was at all relevant times an employer within the meaning of the FMLA.

123.    Defendant, as explained in detail above, interfered with, restrained and denied Plaintiff's exercise and attempted exercise of his rights under the FMLA by wrongfully suspending him and retaliating against him for utilizing his approved intermittent FMLA.

124.    During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment, as compared to other similarly situated co-workers who were outside Plaintiff's protected class and due to his FMLA status.

125.    Defendant's management routinely disfavored and retaliated against employees who utilized intermittent leaves.

126.   Plaintiff had also observed during his employment with Defendant that employees of Defendant that took FMLA leave of absences were often discriminated and retaliated against by Defendant.

127.   Plaintiff's FMLA status was at least one factor that made a difference in Defendant's actions and employment decisions regarding Plaintiff, including but not limited to his termination.

128.   If not for Plaintiff's FMLA protected activity, he would not have been discriminated against, harassed, retaliated against and ultimately terminated by Defendant.

129.   There was a causal connection between Plaintiff's protected FMLA activity and Defendant's adverse employment actions against him, including suspension and termination of employment.

130.   Defendant's unlawful actions were willful, reckless and made in an intentional and deliberate disregard for Plaintiff's rights, especially that Defendant made false accusations as a basis for Plaintiff's suspension and termination, including after Defendant was specifically advised by Plaintiff that Defendant's determinations were false, and that Defendant's conduct was prohibited by the FMLA.

131.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has

sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of employment benefits; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; anxiety, indignation, depression, sleeplessness, weight loss, and loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, liquidated exemplary and/or punitive damages.

**WHEREFORE**, Plaintiff is entitled to and requests the following relief and judgment against Defendant:

a.    Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.    Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.    Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.    An award for the value of lost fringe, medical, pension and all other employment benefits, past and future;

e.    An order awarding the benefits to which Plaintiff was entitled to under the company's health and medical benefit plans;

f. Liquidated damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost by reason of Defendant's violation of 29 USC 2617, plus interest;

g. An award of common law and/or statutory interest, costs, and attorney fees;

h. An injunction prohibiting any further acts of retaliation or discrimination; and

i. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement, promotion or employment.

**COUNT 2**

**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964: TITLE VII; CIVIL RIGHTS ACT OF 1991; AS AMENDED**

**(Race Discrimination)**

132. Plaintiff incorporates by reference all the allegations contained above as though fully stated herein.

133. At all times relevant to this action, Defendant was prohibited under Title VII from discriminating against Plaintiff because of his race with respect to any term, condition or privilege or employment, including termination.

134. In violation of this duty, Plaintiff was unjustly terminated because of his race.

135. The reasons provided for Plaintiff's termination were pretextual in nature

because Plaintiff did not have any performance deficiencies warranting his suspension and termination, did not have any progressive discipline on his record, Defendant's falsified the reasons for Plaintiff's termination, nor were there any legitimate, non-discriminatory reasons for Plaintiff's termination.

136.  As a direct and proximate result of Defendant's race discrimination, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight loss and/or gain, loss of the ordinary pleasures of everyday life, inability to socialize and enjoy his community, including the right to a gainful occupation of choice. Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

137.  As a direct and proximate result of Defendant's race discrimination, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a.  Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and

suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. An award of interest, costs, and reasonable attorney fees;

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment, including but not limited to reinstatement.

**COUNT 3**

**VIOLATION OF ELLIOTT-LARSEN**
**CIVIL RIGHTS ACT - MCL 37.2101 ET SEQ.**
**(Race Discrimination)**

138. Plaintiff repeats and re-alleges the allegations set forth above.

139. At all times during his employment with Defendant, Plaintiff was qualified for the positions he held.

140. At all material times, Plaintiff was an employee and Defendant were his employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. (the "Act").

141. The Act prohibits an employer from discriminating against, discharging or retaliating against an employee on the basis of race.

142. As set forth above, Plaintiff suffered unlawful discrimination by Defendant on the basis of his race because a motivating factor in Defendant's decision to terminate Plaintiff was due to his race.

143. Plaintiff's race was a determining factor or one factor that made a difference in Defendant's decision to terminate Plaintiff.

144. Defendant's actions were also made in an intentional, willful and malicious disregard for Plaintiff's rights.

145. There is both direct evidence and circumstantial evidence that Defendant's decision to terminate Plaintiff was due, at least in part, to Plaintiff's race.

146. As a result of Plaintiff being terminated due to his race, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight change, loss of the

ordinary pleasures of everyday life, inability  socialize and enjoy his community, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical, mental and emotional distress related damages;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Economic damages, including for lost wages and fringe and pension benefits, past and future, bonus payments, in whatever amount Plaintiff is found to be entitled;

d. An award of interest, costs, and reasonable attorney fees;

e. An injunction prohibiting any further acts of retaliation or discrimination by Defendants; and

f. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

**COUNT 4**

**VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT ADEA – 29 U.S.C. 621; CIVIL RIGHTS ACT OF 1991; AS AMENDED**
**(Age Discrimination)**

147. Plaintiff repeats and re-alleges the allegations set forth above.

148. The Age Discrimination in Employment Act (ADEA) forbids age discrimination against people who are age 40 or older.

149. Plaintiff was over the age of 40 when he was terminated from his employment with Defendant.

150. At all material times, Plaintiff was an employee and Defendant was his employer, covered by and within the meaning of the ADEA.

151. The ADEA prohibits an employer from discriminating against, discharging or retaliating against an employee on the basis of age.

152. As set forth above, Plaintiff suffered unlawful discrimination by Defendant on the basis of his age because Defendant's decision to terminate Plaintiff was due to his age.

153. Defendant's actions were also made in an intentional, willful and malicious disregard for Plaintiff's rights.

154. There is both direct evidence and circumstantial evidence that Defendant's decision to terminate Plaintiff was due to Plaintiff's age.

155. As a result of Plaintiff being terminated due to his age, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight change, loss of the ordinary pleasures of everyday life, inability  socialize and enjoy his community, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

      a. Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical, mental and emotional distress related damages;

      b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

   c. Economic damages, including for lost wages and fringe and pension benefits, past and future, bonus payments, in whatever amount Plaintiff is found to be entitled;

d. An award of interest, costs, and reasonable attorney fees;

e. An injunction prohibiting any further acts of retaliation or discrimination by Defendants; and

f. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

**COUNT 5**

**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT - MCL 37.2101 ET SEQ. (Age Discrimination)**

156. Plaintiff repeats and re-alleges the allegations set forth above.

157. At all times during his employment with Defendant, Plaintiff was qualified for the positions he held.

158. At all material times, Plaintiff was an employee and Defendant was his employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. (the "Act").

159. The Act prohibits an employer from discriminating against, discharging or retaliating against an employee on the basis of age.

160.  As set forth above, Plaintiff suffered unlawful discrimination by Defendants on the basis of his age because a motivating factor in Defendant's decision to terminate Plaintiff was due to his age.

161.  Plaintiff's age was a determining factor or one factor that made a difference in Defendant's decision to terminate Plaintiff.

162.  Defendant's actions were also made in an intentional, willful and malicious disregard for Plaintiff's rights.

163.  There is both direct evidence and circumstantial evidence that Defendant's decision to terminate Plaintiff was due, at least in part, to Plaintiff's age.

164.  As a result of Plaintiff being terminated due to his age, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight change, loss of the ordinary pleasures of everyday life, inability  socialize and enjoy his community, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional  compensatory,  exemplary  and/or  punitive  damages,  and  other consequential and incidental damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical, mental and emotional distress related damages;
b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;
c. Economic damages, including for lost wages and fringe and pension benefits, past and future, bonus payments, in whatever amount Plaintiff is found to be entitled;
d. An award of interest, costs, and reasonable attorney fees;
e. An injunction prohibiting any further acts of retaliation or discrimination by Defendants; and
f. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

**COUNT 6**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

165. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

166.  As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendant, particularly due to Defendant knowingly and intentionally making false accusations against Plaintiff to wrongfully terminate a long-term, 24+ year employee; Defendant's conduct was intentional and reckless; and Defendant's conduct caused Plaintiff severe emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a.     Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.     Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.     Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.     An award for the value of lost fringe and pension benefits, past and future;

e.     An award of interest, costs, and reasonable attorney fees;

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment.

**COUNT 7**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

167. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

168. As set forth above, Plaintiff was subjected to extreme and outrageous conduct by Defendant.

169. Defendant's conduct was negligent, and Defendant conduct caused Plaintiff severe emotional distress.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.      Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.      An award for the value of lost fringe and pension benefits, past and future;

e.      An award of interest, costs, and reasonable attorney fees;

f.      An injunction prohibiting any further acts of retaliation or discrimination; and

g.      Whatever other equitable relief appears appropriate at the time of final judgment.

## COUNT 8

## BUSINESS DEFAMATION

170.  Plaintiff repeats and re-alleges the allegations set forth above.

171.  Defendant made false and defamatory statements concerning Plaintiff.

172.  Defendant published and communicated those false and defamatory statements concerning Plaintiff to third parties without privilege or authorization.

173.  Defendant published the false and defamatory statements concerning Plaintiff with actual malice, with knowledge of the statements' falsity, and/or with reckless and negligent disregard for the falsity of the statements.

174. As a result of Defendant's false and defamatory statements concerning Plaintiff, Plaintiff has suffered and will continue to suffer damage and other harm, including damages to his reputation and/or damage to his current and prospective business relations.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant as follows:

a.   Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.   Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.   An award of interest, costs, and reasonable attorney fees;

d.   Whatever other equitable relief appears appropriate at the time of final judgment, including but not limited to reinstatement.

Respectfully submitted,

*/s/  Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorney for Plaintiff
Law Office of Thomas R. Warnicke, PLLC
30200 Telegraph Road, Suite 102
Bingham Farms, MI 48025
(248) 410-3031
tom@warnickelaw.com

**JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,

*/s/ Thomas R. Warnicke*

Thomas R. Warnicke (P47148)
Attorney for Plaintiff
Law Office of Thomas R. Warnicke, PLLC
30200 Telegraph Road, Suite 102
Bingham Farms, MI 48025
(248) 410-3031
tom@warnickelaw.com

# EXHIBIT  A

MotorCity CASINO·HOTEL

# DISCIPLINARY NOTICE

Please Print or Type

**Employee Name:** Robert Gaines **Date of Incident:** Various

**Job Classification:** Slot Floorperson **SSN#:**

**Department:** Slot Operations

☐ Counseling (verbal) ☐ Written ☐ Suspension ☒ Suspension Pending Investigation ☐ Termination

**Length:** **Date(s):**

This notice is given to help you correct conduct/behavior which is not in accordance with Company Rules, Policies, and Procedures.

**Details of specific infraction/problem/corrective action to be taken:**

Violation of GROPC#5 Making false statements or omissions of pertinent facts on personnel records or other MotorCity Casino Hotel records or documents.

Robert you utilized FMLA on 12/18/23, 12/25/23, and 12/30/23. During those dates, you were on a cruise. You demonstrated activity that was inconsistent with your medical certification. You have improperly utilized intermittent FMLA.

**Witnessed by:** Timecard/Pictures

**Has employee been disciplined before?** ☑ Yes ☐ No

**Give brief description of prior discipline and dates issued:**

Failure to meet with the corrective action or to improve work performance may be cause for further disciplinary action, up to and including termination.

**Employee's response:**

<tab to or click here>

[signature] 5/29/14 — 1/18/2024

**Employee Signature** **Date**

[signature] 1/18/2024

**Supervisor/Manager Issuing Discipline** **Date**

Your signature is not an admission of your guilt, but only an acknowledgment of receipt/issuance of this notice.

1/18/2024

**Witness Signature** **Date**

1/18/2024

**Union Representative** **Date**

Copies to: HR / Department Head / File / Employee

# <u>EXHIBIT B</u>



January 23, 2024

Robert Gaines
34951 Stellwagon
Wayne, MI 48184

Dear Mr. Gaines:

This letter is in reference to your employment status with Detroit Entertainment, L.L.C., dba MotorCity Casino Hotel (Company). You were suspended pending investigation as a result of a company policy violation.

Our investigation concluded you violated the Company's general rules, specifically:

- 5. Making false statements or omissions of pertinent facts on personnel records or other MotorCity Casino Hotel records or documents or otherwise doing so orally or in writing to any management personnel or giving false information in an accident/incident report or an investigation.

Robert, you admitted that you were on a cruise and during your cruise to another country you called off FMLA on December 18, 25, & 30, 2023. Additionally, you called off Personal/Sick on December 19, 24, & 26, 2023.

The Company has completed its investigation and as a result of your conduct, your employment with MotorCity Casino Hotel has been terminated effective immediately.

Your personal items that remain on property, if any, will be gathered and returned to you. Please contact me if you have any questions at (313) 237-5291.

Sincerely,

*JoAnn Taylor*

**JoAnn Taylor**
Director of Human Resources and Employee Relations

2901 Grand River Avenue Detroit, Michigan 48201-2907

# EXHIBIT  C

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form. | | COMPLAINT/CHARGE NUMBER<br>EEOC #: 23A-2024-01213 |
|---|---|---|
| MICHIGAN DEPARTMENT OF CIVIL RIGHTS and THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | | |
| NAME (Indicate Mr., Ms., Mrs.)<br>Robert D. Gaines | | TELEPHONE NO. (Include Area Code)<br>313-574-0550 |
| STREET ADDRESS, CITY, STATE AND ZIPCODE<br>34951 Stellwagen St, Wayne, MI 48184 | | |
| Named is the employer, labor organization, employment agency, apprenticeship committee, state or local government agency who discriminated against me. | | |
| NAME<br>MotorCity Casino Hotel | # EMPL/MEMBERS<br>100 | TELEPHONE NO. (Include Area Code)<br>313-237-5279 |
| STREET ADDRESS, CITY, STATE AND ZIPCODE<br>2901 Grand River Avenue, Detroit, MI 48201 | | |
| CAUSE OF DISCRIMINATION BASED ON<br>Race, Age | | DATE OF MOST RECENT OR CONTINUING DISCRIMINATION<br>January 26, 2024 |

I am a 45-year-old Black person and I believe I was disciplined on January 18, 2024, and discharged on January 26, 2024, due to my age and race.

I was hired by the Respondent and last worked as a Slot Floor Person, located at 2901 Grand River Avenue, Detroit, MI 48201.

**Discharge 1/26/2024 Age, Race**

On January 26, 2024, I was terminated as a result of the investigation by the respondent's representatives. I believe my age and race were factors in the discharge.

**Discipline 1/18/2024 Age, Race**

On January 18, 2024, I was suspended for allegedly violating company policy. I deny the allegation. I believe my age and race were factors in the discipline.

This complaint is based on the following law:

Age Discrimination in Employment Act
Elliott-Larsen Civil Rights Act No 453, Public Act of 1976, as amended
Title VII, US Civil Rights Act of 1964, as amended

I have read the certified complaint and to the best of my knowledge, information, and belief, the allegations are grounded in fact. This certified complaint is made in good faith and not made for any improper purpose, including to harass or to cause unnecessary expense.

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

2024-07-15 11:11:51 UTC E-SIGNED by Robert Gaines

# EXHIBIT  D



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Patrick V McNamara Bldg
477 Michigan Avenue, Room# 865 Detroit, MI 48226
Telephone: (313) 226-7636

August 6, 2024

Robert D. Gaines
34951 Stellwagen St
Wayne, MI 48184

RE: MDCR Case#: 647103
EEOC Case#: 23A-2024-01213
Robert D. Gaines v MotorCity Casino Hotel

Dear Robert D. Gaines:

You recently filed a complaint of employment discrimination with the Michigan Department of Civil Rights (MDCR). That agency has sent us a copy of your complaint (enclosed), and it has been assigned an EEOC number. Please use that number whenever you contact us. A copy or notice of your charge will be sent to the respondent by the MDCR.

You are encouraged to cooperate with the MDCR. The final findings and orders of the MDCR may be adopted by the Commission.

MDCR will investigate and resolve your charge under its statute. Under Section 1601.76 of our regulations, you are entitled to request us to review the MDCR's final finding. To secure this review, you must request it in writing to this office within 15 days of your receipt of the MDCR's finding in your case. Otherwise, EEOC will generally adopt the MDCR's finding.

Please note: The box(es) checked below are applicable to your charge.

☒ Title VII: Under Title VII of the Civil Rights Act of 1964, as amended, the Commission must issue you a Notice of Right to Sue before you may file private suit under this law.

***ONCE 90 DAYS HAVE PASSED FROM YOUR RECEIPT OF A NINETY-DAY NOTICE, YOUR RIGHT TO SUE IS LOST.***

☒ADEA : The Age Discrimination in Employment Act of 1967, as amended (ADEA) requires, before you can sue, that a charge alleging age discrimination be filed with both the EEOC and an appropriate State agency. Your age discrimination charge has been sent to the EEOC by the MDCR in order to preserve your right to sue under the ADEA. You may file a lawsuit at any time 60 days after you filed your charge *until* 90 days after you receive a notice from the EEOC (Ninety-day Notice) that it has completed processing of your charge.

**ONCE 90 DAYS HAVE PASSED FROM YOUR RECEIPT OF A NINETY-DAY NOTICE, YOUR RIGHT TO SUE IS LOST.**

☐EPA : You may bring suit under the Equal Pay Act (EPA) of 1963, as amended, without waiting for EEOC or any state or local agency to act. EPA suits must be brought within 2 years (3 years in cases of willful violations) of the alleged EPA underpayment.

☐ADA : Under the Americans with Disabilities Act of 1990, the Commission must issue a Notice of Right to Sue before you may file private suit under this law.

☐GINA: Under the Genetic Information Nondiscrimination Act (GINA) of 2008, the commission must issue a Notice of Right to Sue before you may file private suit under this law.

EEOC regulations require that you notify us of any change in your address or of any prolonged absence from your current address. Your cooperation in this matter is essential.

Sincerely,

Michelle Eisele

*Michelle Eisele*
*District Director*

*Enclosure*

*CR422 (Rev. 03-2020)*

# EXHIBIT E



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**DETERMINATION AND NOTICE OF RIGHTS**

Issued On: September 30, 2025

To: Robert D. Gaines
34951 Stellwagen Street
Wayne, MI 48184

Re: Robert D. Gaines v. MotorCity Casino Hotel
EEOC Charge Number: 23A-2024-01213

EEOC Representative and email: Yvonne Allen
State, Local, and Tribal Coordinator
yvonne.allen@eeoc.gov

---

**DETERMINATION OF CHARGE**

The EEOC issues the determination that substantial weight has been accorded to the findings of the state or local fair employment practices agency that investigated your charge.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Ramiro Gutierrez – September 30, 2025
Ramiro Gutierrez
Field Office Director

cc: David N Turner
Senior VP of Human Resources
Motor City Casino Hotel
2901 Grand River Avenue
Detroit, MI 48201